### JUNIUS GROSS v. THE STATE.

No. 19880. Delivered November 23, 1938.

The opinion states the case.

*R. G. Robertson,* of Port Arthur, and *O. M. Lord,* of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for ten years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Orelia Segura by stabbing her with a knife.

The homicide occurred on the 12th day of December, 1937, in the home of Will Washington, where deceased occupied a room on the second floor. According to the testimony of witnesses for the State, deceased and appellant were together in the room of deceased shortly prior to the homicide. We quote from the testimony of one of the witnesses, as follows:

"As I started to say, I went upstairs to go to my room and as I got up there Orelia [deceased] called me to her room. When she called me I went into her room to see what she wanted. When I got in there I found this man, Junius Gross [appellant], in there. There was no one else in there but just those two. When I got into her room Orelia was sitting on the trunk and Junius Gross was standing up in the middle of the floor. They were not talking when I entered the room. Junius did not have a conversation with me. Orelia said something to me,—she said 'You know I always told you that when me and my husband separated I did not want another husband soon?' I said 'Yes, you did,' and I told her that I had to go so I left her room and went into mine. About five minutes after I went into my room I heard her tapping her foot against the trunk or on the floor, as if she was keeping time with the music because she had her radio on, and about five minutes more after that time I heard three screams. * * * The screams I heard were coming out of Orelia's room. It was Orelia doing the screaming. She didn't say anything when she screamed. She just screamed three times is all that I heard, except that she screamed and said 'Lord, Lord, have mercy.' I went out of my room into the hall and when I got out of my room I saw Junius Gross running out the front door on the front porch. When I saw Junius Gross he was just about four steps from the door of this woman's [referring to deceased] room. He was going to the front door on the front porch upstairs. When I saw him running out that way I run behind him and I didn't know what happened. I went to the front porch. When I got there I didn't see anybody and I did not see him. I looked outside and didn't see anything so I came back to this girl. When I got to her room the door was about half way open, so I pushed it open and when I did I seen her laying down on the floor on her back. About that time my aunt and uncle were coming up. I walked away from the room and went up to the front door and stood there until the officers came. Nobody went into the room until the

officers got there. I saw this man Junius Gross running down the hall away from Orelia's room. He was running down the hall toward the front porch. He went out the door and out on the porch upstairs and disappeared."

The testimony on the part of the State was to the further effect that there was no knife or weapon of any character in the room of the deceased. Shortly after the homicide appellant went to officers and surrendered. They took a knife from his possession which they testified was clean. Touching the nature of the wounds, the undertaker testified as follows:

"I found a wound on the forehead that came down on the left hand side. It just made a kind of semi-circle. That wound went to the skull but it didn't fracture the front of the skull at all. The wound didn't go all the way across her face like that. It made more of a semi-circle like that [indicating] and looked to be about the size of a silver dollar. I found a wound on her between the sixth and seventh ribs just to the left of the sternum bone, which evidently went directly to her heart. It went into her heart."

Appellant did not take the stand, but introduced witnesses whose testimony raised the issue of alibi.

The evidence is deemed sufficient to support the conviction.

No bills of exception are brought forward.

The judgment is reformed in order that it may be shown that appellant is condemned to confinement in the penitentiary for not less than two nor more than ten years.

As reformed, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.